FILED
CLERK

2/9/2021 3:37 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X

For Online Publication Only

ANNEMARIE CASIO, CRAIG MOSKOWITZ,
DAVID BRONSON, INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS SIMILARLY
SITUATED,

                                      Plaintiffs,

           -against-

VINEYARD VINES, LLC,

                                      Defendant.

---------------------------------------------------------------------X

**MEMORANDUM & ORDER**
19-CV-5135 (JMA) (AYS)

**APPEARANCES:**

Charles D. Moore
Christopher J. Moreland
1650 IDS Center
80 South 8th Street
Minneapolis, MN 55402

Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021

Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
    *Attorneys for Plaintiffs*

August T. Horvath
1301 Sixth Avenue, 25th Floor
New York, NY 10019
    *Attorney for Defendant*

**AZRACK, United States District Judge:**

      Defendant Vineyard Vines, LLC ("Defendant") moves to dismiss the complaint of

plaintiffs Annemarie Casio, Craig Moskowitz, and David Bronson ("Plaintiffs") pursuant to

Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part Defendant's motion.

## I.   BACKGROUND[1]

Defendant "manufactures, produces[,] distributes, markets, labels and sells high end yet wearable mainstream preppy clothing and accessories."  (ECF No. 11 at 2.)  The amended complaint describes Defendant's products as "evocative of New England chic, crossed with a Kenny Chesney concert, layered with pastels."  (Id.)

Plaintiffs' allegations concern the pricing practices and tags used on merchandise sold in Defendant's 19 outlet stores.  The amended complaint describes these outlet stores as distinct from Defendant's more than 70 traditional "retail" stores.[2]  Plaintiffs allege that Defendant's outlet stores offer exclusive products that "purport to be identical" to those sold in the "retail" stores. (Id. at 3.)  According to Plaintiffs, the products in the outlet stores "share similar product line names" and "similar style numbers" to their "retail" store counterparts.  (Id.)  As depicted below, the products with which Plaintiffs take issue are sold in the outlet stores using price tags that list a "suggested retail" price followed by "our price."  (Id.)



(Id. at 4.)

---

[1]   The following facts are taken from the amended complaint, (ECF No. 11), and are assumed to be true for the purposes of this motion.  See Kalnit v. Eichler, 264 F.3d 131, 135 (2d Cir. 2001).

[2]    Defendant acknowledges that its outlet stores are distinct from the other stores in which it sells its products. However, Defendant's motion papers describe those non-outlet stores as "boutique" stores, rather than "retail" stores. (ECF No. 17-1.)  As explained in more detail below, the terminology used to refer to the non-outlet stores is a critical part of Plaintiffs' allegations of deceptive conduct.

Plaintiffs claim that "[d]espite their similarity in appearance and classification, the Outlet Products are of distinctly lower quality, evinced through the care tags." (<u>Id.</u> at 5.)  In particular, Plaintiffs point to the fabric used in the outlet products, which they describe as lower quality than the fabric used in the products' "retail" store counterparts.  According to Plaintiffs, by labeling the outlet store-products with tags that include suggested "retail" reference prices, Defendant implies that "the items are sold at Defendant's 'retail' stores at the reference points." (<u>Id.</u> at 9.)  The tags, therefore, "represent[] to consumers that the quality of the items offered in the Outlet Stores are identical to the quality of the items offered in its Retail Stores." (<u>Id.</u>)  In reality, Plaintiffs claim, the products at issue are made "exclusively for the Outlet Stores" and are "not of the same or similar quality as the Retail Products." (<u>Id.</u> at 9-10.)

Plaintiffs seek to represent a class of those similarly situated who bought Defendant's products in outlet stores in New York and New Hampshire.  They bring claims for violations of New York General Business Law Sections 349 and 350, New Hampshire Consumer Protection Act Section 358-A-1, the Magnuson-Moss Warranty Act, and unjust enrichment.

## II.   LEGAL STANDARD

Defendant moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) on various bases that are described in more detail below.

### A.   <u>Standard of Review</u>

To survive a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Twombly</u>, 550

U.S. at 556).  Mere labels and legal conclusions will not suffice.  <u>Twombly</u>, 550 U.S. at 556.  When reviewing a motion to dismiss, the Court accepts the factual allegations set forth in the complaint as true and draws all reasonable inferences in favor of the plaintiff.  <u>See</u> <u>Cleveland v. Caplaw</u> <u>Enters.</u>, 448 F.3d 518, 521 (2d Cir. 2006).

**B.** **<u>State Consumer Protection Law Claims</u>**

To plead their statutory claims under both the New York and New Hampshire consumer protection laws, Plaintiffs must satisfy similar standards.

Section 349 of the New York General Business Law ("GBL") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  NYGBL § 349(a).  Similarly, Section 350 of the NYGBL bars "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." <u>Id.</u> § 350.  To state a claim under either Section 349 or Section 350 of the NYGBL, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." <u>Orlander v. Staples, Inc.</u>, 802 F.3d 289, 300 (2d Cir. 2015) (quoting <u>Koch v. Acker,</u> <u>Merrall & Condit Co.</u>, 967 N.E.2d 675, 675 (N.Y. 2012)).

The New Hampshire Consumer Protection Act ("CPA") targets similar conduct.  The CPA bars representations "that goods or services have sponsorship, approval characteristics, ingredients, uses, benefits, or qualities, that they do not have" and "that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."  N.H. Rev. Stat. Ann. § 358-A:2 (V and VII).  The statute provides that "[a]ny person injured by another's use of any method, act or practice declared unlawful under this chapter may bring an action for damages and for such equitable relief." <u>Id.</u> 358-A:10(I).

4

Defendant argues that Plaintiffs have failed to allege viable claims under both state statutes because: (1) the challenged outlet practices are not deceptive or misleading, and (2) Plaintiffs have failed to allege that they were injured.   (ECF No. 17-1 at 13-20.)   The Court addresses each argument in turn.

    1.  <u>Deceptive or Misleading Conduct</u>

Defendant argues that the price tags in question that display the "suggested retail" price followed by "our price" are not deceptive or misleading.  According to Defendant, (1) reasonable consumers understand how outlets work, (2) the term "retail" as used on the price tags is clear and unambiguous, and (3) there is no difference in quality between the products sold in the outlet stores and the comparable products sold in the traditional "retail" or "boutique" stores.  For the reasons explained below, the Court is unable to credit Defendant's arguments at the motion to dismiss stage, but recognizes that Defendant can likely prevail later in the case.

    a.  <u>Outlet Store Practices</u>

Defendant argues that the challenged practices are not deceptive or misleading under New York and New Hampshire law because a reasonable consumer would "understand that outlet retail stores typically are stocked with merchandise produced specifically for outlets that, while not necessarily of lower quality, may be produced at lower cost to the manufacturer for various reasons."  (<u>Id.</u> at 13.)

Under New York law, a deceptive act is one that is "likely to mislead a reasonable consumer acting reasonably under the circumstances."  <u>Maurizio v. Goldsmith</u>, 230 F.3d 518, 521 (2d Cir. 2000).  Though case law analyzing the New Hampshire CPA is limited, courts appear to apply a similar standard to New York courts and also look to consumer behavior.  <u>See, e.g.</u>, <u>Fat Bullies Farm, LLC v. Devenport</u>, 170 N.H. 17, 24 (2017) ("In determining which commercial actions not

specifically delineated are covered by the act, we have employed the 'rascality' test.  Under the rascality test, the objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." (citation and internal quotation marks omitted)).[3]

At this early juncture in the case, the Court is unable to determine how a reasonable consumer would perceive the challenged price tags.  "Courts have generally held that since this second factor [under the New York GBL, i.e., whether the act is misleading in a material way] requires a reasonableness analysis, it cannot be resolved on a motion to dismiss."  Buonasera v. Honest Co., Inc., 208 F. Supp. 3d 555, 566 (S.D.N.Y. 2016) (collecting cases).  Indeed, other courts in this circuit have been unable to perform a reasonableness analysis in the specific context of analyzing outlet store practices.  For example, in Irvine v. Kate Spade & Co., a similar case involving contested pricing labels at Kate Spade outlet stores, Judge Furman denied a motion to dismiss in part on this basis.  The court recognized, however, that "[d]iscovery may well reveal that the proverbial 'reasonable consumer acting reasonably' would not perceive that [allegedly false] message, let alone be misled by it."  No. 16-CV-7300, 2017 WL 4326538, at *4 (S.D.N.Y. Sept. 28, 2017).  Nevertheless, on a motion to dismiss, "those are issues of fact that cannot be resolved at this stage of the litigation."  Id.  Accordingly, the Court is not yet positioned to determine that reasonable consumers would understand outlet pricing and therefore not be misled by the specific practices Plaintiffs challenge in the amended complaint.

---

[3]  Neither party cites to case law analyzing the New Hampshire CPA in any depth.  According to Plaintiff, "[t]he same conduct that violates the New York statutes violates the New Hampshire CPA."  (ECF No. 11 at 20.)  Defendant concedes that Plaintiffs' CPA claims, like the GBL claims, "also require a showing that Defendant made a false or misleading statement, and that plaintiff was injured as a result of the alleged deception."  (ECF No. at 17-1 at 13.)  Accordingly, the Court's analysis as to whether the challenged conduct is deceptive or misleading will consider the state statutory claims together.

The case law Defendant cites analyzing California consumer protection laws does not counsel otherwise.  In Rubenstein v. The Gap, Inc., a California appellate court found as a matter of law with respect to Gap outlet stores that "Gap's use of its own brand names in factory store names and on factory store clothing labels is not likely to deceive a reasonable consumer for the simple reason that a purchaser is still getting a Gap or Banana Republic item."  222 Cal. Rptr. 3d 397, 404 (Cal. Ct. App. 2017).  According to Defendant, the case stands for the proposition that the Court can find that "a reasonable consumer would not reasonably expect to see only items that are sold in retail stores, or were once sold at retail stores, as Plaintiffs allege."  (ECF No. 17-1 at 14.)  Rubenstein differs from the instant situation, however.  In Rubenstein, the second amended complaint "allege[d] no advertising or promotional materials or any other statements disseminated by Gap to consumers that its factory store clothing items were previously for sale in traditional Gap stores or were of a certain quality."  222 Cal. Rptr. 3d at 404.  Here, though, the entire basis of Plaintiffs' allegations is that Defendant's price tags imply that the outlet store products are of a certain quality.

Park v. Cole Haan, LLC also presents a challenge to outlet practices that is distinguishable from Plaintiffs' claims.  No. 17-CV-1422, 2019 WL 1200337 (S.D. Cal. Mar. 13, 2019).  In Park, the plaintiff did "not identify any representation that items sold in Cole Haan's outlet stores were previously sold in its traditional stores, or where [sic] the same quality."  Id.  While recognizing that "the quality of goods is material to reasonable consumers, and price can be a reflection of that," the district court noted, however, "the retail history of clothing (e.g., whether it was offered for sale in a traditional store before being sold in an outlet store) is generally not."  Id. at *2.  A customer to whom it was material could simply ask a sales associate.  Id.  At issue in this case, though, is not the retail history of the challenged products, but rather the quality of those goods

and the extent to which the price at which they are advertised and sold reflects that quality—i.e., the very issue the Park court stated was material to a reasonable consumer. Accordingly, the Court cannot, as a matter of law, credit Defendant's proposed understanding of reasonable consumer behavior.

      b.   The Meaning of the Word "Retail"

Citing a variety of online dictionaries, Defendant next claims that the word "retail," as used on the contested price tags, is clear and unambiguous and describes the sale of goods at a general level. (ECF No. 17-1 at 15-16.) According to Defendant, a reasonable consumer would understand that an outlet is a kind of "retail" store and not excluded from the reference to "retail" used in the pricing description on the tag. (Id.) Thus, Defendant claims, the price tags are not deceptive or misleading because no reasonable consumer would find the word "retail" to mean or imply that products of the same quality that are sold in the outlet stores are sold in retail locations.

The Court cannot determine as a matter of law that the term "retail" as used on the price tags is as clear and unambiguous as Defendant suggests. Plaintiffs have plausibly pled that the terminology used on the price tags may be deceptive or misleading in that some consumers may interpret it to mean that the product is of similar quality to products offered in the "retail" or "boutique" stores. Indeed, Defendant itself recognizes the level of imprecision with which it uses the term "retail" by conceding at least one instance on its own website where it makes a distinction between gift card use in its "retail" versus "outlet" stores. (ECF No. 17-1 at 17.)

Plaintiffs provide further persuasive support for their contention that their interpretation of the word "retail" as used on the price tags is not an esoteric understanding deviating from what to most people would be clear and unambiguous phrasing. For example, other district courts in this circuit have made the same distinction as Plaintiffs between outlet and non-outlet stores by

describing them as "outlet stores" and "retail stores." See, e.g., Marino v. Coach, Inc. ("Coach I"), 264 F. Supp. 3d 558, 570 (S.D.N.Y. 2017) ("Consumers, like Marino, viewing the MFSRPs, may believe that they are purchasing an item [in an outlet store] that is of the same or similar quality as visually similar products sold in Coach retail stores."); Marino v. Coach ("Coach II"), No. 16-CV-1122, ECF No. 83 at 17 (S.D.N.Y. June 12, 2018) ("Plaintiffs allege not that they thought the particular bag purchased matched to specific goods sold in Coach retail stores but that they generally understood, because of the MFSRPs, that the goods sold in the outlet store were equivalent in quality to retail goods.")  Based on the foregoing, the Court finds that Plaintiffs have adequately pled that the use of the word "retail" in the context of the outlet price tags is misleading.

      c.  Quality of the Products

Defendant next argues that Plaintiffs have failed to plead deceptive or misleading conduct because they have not alleged any difference in quality between the products except in "the most conclusory terms."  (ECF No. 17-1 at 20.)  According to Defendant, Plaintiffs "allege quality differences based solely on the fabrics out of which the products were made, but the web site shows that similar items with exactly the same fabric composition as the Outlet Products sold for the 'Suggested Retail' price."  (Id.)  In response, Plaintiffs contest the Court's ability to consider Defendant's screenshots of what appear to be comparable products that were offered for sale on Defendant's website on June 22, 2020.  (ECF No. 17-2.)  Furthermore, Plaintiffs argue, even if the Court could consider the screenshots in Defendant's exhibits, there are a variety of concerns as to whether the Court can make an adequate comparison based on screenshots alone and whether the specific products Defendant selected as comparators are the most appropriate to use to assess any purported differences in quality between the outlet and "retail" products.  (ECF No. 18 at 21.)

The Court agrees with Plaintiffs.  First, the Court rejects Defendant's request to take judicial notice of the website excerpts it attaches to its motion to dismiss.  In interpreting Federal Rule of Evidence 201, courts in this circuit have found that "for purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination."  Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) (citations and internal marks omitted).  If a court does take judicial notice of a website, the website's "purposes at the motion-to-dismiss stage are limited" in that it can "be used only for determining what the documents state" and not "to prove the truth of their contents." Hesse v. Godiva Chocolatier, Inc., 463 F. Supp. 3d 453, 463 (S.D.N.Y. 2020) (citation omitted).

Here, Defendant's request for the Court to take judicial notice of the website excerpts fails to satisfy these standards.  First, Plaintiffs have contested the authenticity of the website and the Court's ability to make an accurate and ready determination of the information in the screenshots. The screenshots are limited in that they represent a narrow component of the website at a precise moment in time on June 22, 2020 (when Defendant's counsel accessed the website).  It is unknown how long the website pages appeared with the descriptions, pictures, and prices in the screenshots—such as at the time when Plaintiffs purchased the goods at issue.  While Defendant accuses Plaintiffs of using screenshots in the amended complaint that "are carefully selected pieces of the website that paint a distorted and misleading picture, omitting other parts of the website that show Plaintiffs' allegations to be not just unsupported, but false," (ECF No. 19 at 6), Defendant has engaged in similar conduct and has provided the Court with carefully selected pieces of the website that may not necessarily provide the Court with a full understanding.  Additionally, it appears that Defendant seeks to use the excerpts to prove the truth of their contents—in particular,

the descriptions of the products and the lists of the materials used in them. Even if the Court took judicial notice of the website excerpts, they could not be used for this purpose.

Furthermore, the website excerpts do not allow the Court to engage in the sort of comparison Defendant seeks. Defendant argues that "every consumer in a Vineyard Vines outlet picks up a shirt or a bathing suit, feels the fabric and looks at the color, and decides whether that item is worth the price he or she will pay, whether it is the 'outlet' price on the tag or the even lower price that the item may cost during periodic sales." (Id. at 14.) Defendant expects the Court to perform the same analysis at the motion to dismiss stage and deem the products Defendant has selected to be worthy comparators to those on which Plaintiffs focus in their amended complaint. Not only is the Court unable to do so because, among other reasons, two of the three exhibits do not even contain photographs of the products at issue to allow a visual comparison to be made, but any determination as to product quality would require the Court to resolve clear factual disputes that it lacks any capability to resolve on a motion to dismiss. For example, Defendant argues that based on the website excerpts alone, the Court should be able to determine as a matter of law that a "Whale Shirt" in one of its outlet stores is the proper analogue for the "Arawak Tucker Shirt" advertised on its website, while the "Chappy" product line in its outlet stores cannot be adequately compared to the "Chappy" product line offered in its "boutique" stores. (ECF No. 19 at 10 n.1.) In addition, Defendant asks the Court to assess whether certain percentages of material used in one fabric is higher quality than a different percentage used in another fabric. However, the Court lacks any basis to make this determination on a motion to dismiss without a developed factual record. Accordingly, the Court finds Plaintiffs adequately pled deceptive or misleading conduct.

11

2.  Injury

Defendant next argues that Plaintiffs' state statutory claims should be dismissed because they have failed to plead a cognizable injury.  Defendant characterizes Plaintiffs' theory as not receiving the "retail" quality products they were expecting.  (Id. at 22.)  According to Defendant, such "[g]eneral allegations of 'inferior quality' without factual details are insufficient, even as to a single product."  (Id.)  Instead, Defendant argues, Plaintiffs "must plead objective, measurable facts about the items as a basis for their lesser value" to "support a claim that they paid more than the actual value of the merchandise received."  (Id. at 23.)

Plaintiffs, however, have advanced a cognizable theory based on the purportedly lower quality of the products they purchased—a theory other courts have credited as a sufficient allegation of a cognizable injury that can survive a motion to dismiss.  Whether the products in the outlet stores actually were of a lower quality, however, is a factual question for the finder of fact to determine and cannot be resolved on a motion to dismiss.

In Coach I, plaintiffs brought similar claims to challenge an outlet practice in Coach Factory stores in which products were marketed with a "Manufacturer's Suggested Retail Price" or "MFRSP."  264 F. Supp. 3d 558, 563 (S.D.N.Y. 2017).  Plaintiffs argued that the MFRSPs were "illusory" because the products were never actually sold for the MFRSP, therefore creating a "false impression of quality" when compared to what appeared to be similar Coach retail products and prices.  Id.  In analyzing this theory of injury, the court granted plaintiffs leave to amend their complaint to allege an injury distinct from an "ephemeral injury" that they would not have purchased an item but for a purportedly false markdown.  Specifically, the court found plausible the theory that by viewing the MFRSPs on the Coach Factory price tags, consumers "believe that they are purchasing an item that is of the same or similar quality as visually similar products sold

in Coach retail stores."  Id.  If plaintiffs could make such an allegation in their amended complaint, the court reasoned, "they may be able to connect Coach's alleged misrepresentation to an injury they suffered relative to being misled about the quality of the product."  Id.

After plaintiffs amended the complaint, Coach again moved to dismiss on the basis that plaintiffs still failed to plead a cognizable injury.  In an oral decision denying Coach's second motion to dismiss, Judge Caproni reiterated that "[a]llegations of a difference in quality are critical because neither New York nor New Hampshire recognized an injury based solely on deception itself.  The fact that plaintiff believed they were getting a bargain is not a cognizable injury."  Coach II, No. 16-CV-1122, ECF No. 83 at 14-15.  However, the court found that plaintiffs "alleged an injury that is concrete, objective, and distinct from the fact that they were deceived."  Id. at 15.  Recognizing that plaintiffs alleged the injury "by the slimmest possible margins" and expressing skepticism "that discovery will support this theory," the court determined that plaintiffs sufficiently pled an injury in that the "particular bags they purchased were of a lower quality than similar retail goods."  Id. at 15, 17.  In particular, such "narrow differences between the outlet wristlets purchased by plaintiffs and the retail wristlets described in the amended complaint are, at this stage, sufficient objective differences in quality."  Id. at 17.

In looking at the allegations in this case, the Court echoes Judge Caproni's hesitation and warns Plaintiffs that discovery may very well disprove their theory of injury.  For purposes of the instant motion to dismiss, however, the Court finds that Plaintiffs have adequately pled an injury consistent with the one the court found to be cognizable in Coach II.  The amended complaint details how Plaintiff Moskowitz purchased a 100% cotton Gingham shirt at the outlet while a shirt he believed to be of comparable quality, a Classic Fit Arawak Gingham Tucker Shirt of 98% cotton and 2% spandex, was available on Defendant's website.  (ECF No. 11 at 7-9.)  Plaintiffs have

alleged that the fabric used in the outlet shirt is of lesser quality than that used in the shirt sold on the website.  (Id.)  Similarly, Plaintiffs compare bathing suits from the CHAPPY line sold in the outlet stores and the "retail" stores.  While the outlet bathing suit is 100% polyester, the "retail" version is 86% polyester and 14% spandex.  (Id. at 5-6.)  Plaintiffs allege that this difference in fabric composition means that the product offered in the outlet store is of lesser quality than those for sale in the "retail" locations.  While discovery may very well show that these differences in the material used in the products in question do not constitute a cognizable injury, Plaintiffs have sufficiently pled injury for purposes of surviving a motion to dismiss.

### C. **Magnuson-Moss Warranty Act**

Plaintiffs claim that Defendant violated the Magnuson-Moss Warranty Act ("MMWA") by selling products in outlet stores that are lower than "retail" quality and therefore do not conform to Defendant's written warranty.  (ECF No. 11 at 22.)  According to Plaintiffs, the phrase "retail price" is a written warranty that the product is "retail" quality.  Defendant argues that the challenged statement on the price tag does not constitute a written warranty, and therefore the MMWA claim should be dismissed.  (ECF No. 17-1 at 28.)  The Court agrees with Defendant.

Under the MMWA, a "written warranty" is defined as:

(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or (B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

14

15 U.S.C. § 2301(6).  For Plaintiffs to state a claim under the MMWA, they "must adequately plead a cause of action for breach of written or implied warranty under state law."  <u>Garcia v. Chrysler Grp. LLC</u>, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015).

New York and New Hampshire law have similar requirements regarding warranties.  Under New York law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."  N.Y. U.C.C. Law § 2–213.  Under New Hampshire law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."  N.H. Rev. Stat. Ann. § 382–A:2–313(1)(a).

Here, Plaintiffs claim that the "retail price" on the product tags is an express warranty as to the quality of the product.  (ECF No. 18 at 23.)  However, this generalized allegation is too vague "to be actionable as an express warranty of anything related to the actual goods."  <u>Coach I</u>, 264 F. Supp. 3d at 574.  Indeed, as Plaintiffs previously argued, the definition of "retail" as used on the price tags is far from clear.  <u>See</u>, supra, at 8.  Any implication from use of the word "retail price" is far from a "specific and unequivocal" representation regarding the quality of an item purchased in the outlet store.  <u>Coach I</u>, 264 F. Supp. 3d at 574 n.13.  Accordingly, Plaintiffs' MMWA claim is therefore dismissed.

## D.  <u>Injunctive Relief</u>

Defendant next argues that Plaintiffs' request for injunctive relief should be dismissed because their purported past harm does not confer standing to seek injunctive relief.  The Court agrees.  A plaintiff who seeks injunctive relief "cannot rely on past injury."  <u>Coach I</u>, 264 F. Supp. 3d at 565.  Rather, "in order to satisfy Article III's injury requirement the plaintiff must allege a

likelihood of future harm." Id.  Plaintiffs lack standing to seek injunctive relief because they have failed to allege how they will be deceived in the future, and therefore cannot demonstrate any likelihood of continuing or future injury.  Nicosia v. Amazon.com, Inc., 834 F.3d 220, 239 (2d Cir. 2016); see also Buonasera, 208 F. Supp. 3d at 564-65 ("[Plaintiff] alleges that [i]f Honest's products were reformulated such that its representations were truthful, Plaintiff would consider purchasing Honest's products in the future. This allegation is insufficient to allege future injury." (citation and internal quotation marks omitted)).  Indeed, this lawsuit's existence shows that Plaintiffs are now aware of the quality of the challenged products and thus they will not be harmed again in the same way they alleged they were harmed in the amended complaint.  See Silva v. Hornell Brewing Co., No. 20-CV-756, 2020 WL 4586394, at *7 (E.D.N.Y. Aug. 10, 2020). Accordingly, Plaintiffs lack standing to seek an injunction.

### E.  Unjust Enrichment Claim

Finally, Defendant argues that Plaintiffs cannot pursue an unjust enrichment claim because such a claim is unavailable if it duplicates a contract or tort claim, such as Plaintiffs' GBL false-advertising claims.  (ECF No. 17-1 at 30.)  Though Plaintiffs may not ultimately recover on an unjust enrichment theory if they prevail on their other claims, New York law still permits them to plead unjust enrichment in the alternative.  See Coach I, 265 F. Supp. 3d at 572; Loheac P.C. v. Children's Corner Learning Center, 857 N.Y.S.2d 143 (1st Dep't 2008).  Accordingly, Plaintiffs' unjust enrichment claim can proceed.

## IV.  CONCLUSION

For the reasons set forth above, Defendant's motion is **GRANTED** in part and **DENIED** in part.

**SO ORDERED.**

Dated:  February 9, 2021
        Central Islip, New York

                                         __/s/ (JMA)_____

                                          JOAN M. AZRACK
                                          UNITED STATES DISTRICT JUDGE